In the Matter of THOMAS JJ. and Another, Children Alleged to be Permanently Neglected. TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; SHIRLEY KK., Appellant. [798 NYS2d 237]—

Peters, J. Appeal from an order of the Family Court of Tompkins County (Rowley, J.), entered May 17, 2004, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be permanently neglected.

In our review of a related matter (*Matter of Thomas JJ.*, 14 AD3d 953 [2005]), we detailed the basis upon which we affirmed Family Court's finding that the children, Thomas (born in 1992) and Taylor (born in 1989), were neglected. Such finding was premised upon respondent's mental illness which rendered her unable to meet her own needs and those of her children (*id.* at 955). Pursuant to a suspended judgment entered in July 2002, the children were placed in the custody of petitioner while respondent was required to engage in counseling and other services to improve her mental well-being and overall ability to care for her children. Upon an extension of placement, over respondent's objection, a permanency plan was approved, contemplating the adoption of Thomas and independent living for Taylor.

In January 2004, petitioner sought to, inter alia, have the children adjudicated permanently neglected. It alleged that respondent failed to make appropriate efforts to stabilize her mental health and plan for the future of her children. After a fact-finding hearing, Family Court adjudicated the children to be permanently neglected. Respondent appeals.

The threshold inquiry in a permanent neglect proceeding is whether the petitioning agency has exercised diligent efforts to encourage and strengthen the parental relationship (*see* Social Services Law § 384-b [7] [a]; *Matter of Star Leslie W.*, 63 NY2d 136, 142 [1984]; *Matter of Alexis X.*, 19 AD3d 759, 761 [2005]; *Matter of Shiann RR.*, 285 AD2d 762, 762-763 [2001]). To satisfy that requirement, the petitioner must demonstrate, by clear and convincing evidence, that it made "reasonable attempts to encourage a meaningful relationship between the parent and his or her children [which] . . . includes providing counseling, making suitable arrangements for visitation with the children, providing services and other assistance aimed at ameliorating or resolving the problems preventing discharge of the children to the parent's care, and keeping the parent informed of the

children's progress and development" (*Matter of Shannon U.*, 210 AD2d 752, 753 [1994], *lv denied* 85 NY2d 807 [1995]; *see Matter of Sheila G.*, 61 NY2d 368, 385 [1984]; *Matter of Shiann RR., supra* at 763; *Matter of Jesus JJ.*, 232 AD2d 752, 753 [1996], *lv denied* 89 NY2d 809 [1997]).

The record demonstrates that petitioner provided respondent with caseworker Nansen Josselyn who routinely monitored respondent's progress and urged her, on multiple occasions, to stay on her medication. Josselyn attempted to hold service plan reviews with respondent, only some of which respondent attended. Josselyn supervised visits between respondent and her children until the children were too emotionally unstable. At that point, petitioner arranged for facilitated visitation at respondent's home. Efforts by Shannon Tiffany, a second caseworker, were stunted by respondent. Nonetheless, Tiffany kept in regular written contact with respondent, updating her as to the well-being of her children once visitation ceased due to the children's mental health. Petitioner repeatedly offered respondent mental health counseling, but respondent continued to refuse the various evaluators suggested. She ultimately completed one such evaluation in February 2003, almost a year after the children had been placed in care. Petitioner also arranged for three different homemakers to assist respondent in addressing the unsanitary condition of her home and respondent fired each one of them. Finally, petitioner arranged for respondent to receive parenting classes which she ultimately completed, despite her initial resistance. In our view, these facts demonstrate that petitioner developed a narrowly-tailored plan to assist respondent to overcome the problems which led to her initial separation from the children (*see Matter of Cassandra JJ.*, 284 AD2d 619, 620 [2001]; *Matter of Edward I.*, 281 AD2d 667, 668 [2001], *lv denied* 96 NY2d 716 [2001]; *Matter of Jesus JJ., supra* at 753).

Next reviewing whether Family Court properly determined that respondent permanently neglected her children by failing to plan for their future, "although physically and financially able to do so" (Social Services Law § 384-b [7] [a]), we agree that respondent has not taken "such steps as may be necessary to provide an adequate, stable home and parental care . . . within a [reasonable] period of time . . . under the financial circumstances available" (Social Services Law § 384-b [7] [c]; *see Matter of Raena TT.*, 7 AD3d 936, 938 [2004]; *Matter of Elijah F.*, 280 AD2d 720, 721 [2001]). In reaching that determination, we review whether respondent took advantage of the "medical, psychiatric, psychological and other social and rehabilitative

services and material resources made available" (Social Services Law § 384-b [7] [c]) and conclude that she failed to utilize those services which could have " 'correct[ed] the conditions that led to the removal of the child[ren] from [her] home' " (*Matter of Elijah F., supra* at 722, quoting *Matter of Leon RR.,* 48 NY2d 117, 125 [1979]). Respondent unduly delayed the commencement of therapy and, once commenced, failed to consistently attend. She was erratic in taking her prescribed medication and only committed to a course of treatment almost 18 months after the children were taken into care. Respondent never fully appreciated the extent of her children's mental health needs, despite being advised of their progress; she continued to place her own needs above their own. "Mindful that Family Court's determinations are 'entitled to great weight and deference and should not be disturbed unless clearly unsupported by the record' " (*Matter of Cassandra JJ., supra* at 621, quoting *Matter of Chantel ZZ.,* 279 AD2d 669, 672 [2001]), there exists no basis to disturb the determination rendered (*see Matter of Grace Q.,* 200 AD2d 894, 895 [1994]; *Matter of Tammy B.,* 185 AD2d 881, 882 [1992], *lv denied* 81 NY2d 702 [1992]).

Mercure, J.P., Crew III, Spain and Kane, JJ., concur. Ordered that the order is affirmed, without costs.