■ In the Matter of ALAINA E. and Others, Children Alleged to be Permanently Neglected. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MELINDA E. et al., Appellants. [875 NYS2d 287]—

Malone Jr., J. Appeal from an order of the Family Court of Broome County (Connerton, J.), entered October 23, 2007, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondents' parental rights.

Respondent Melinda E. is the mother of Alaina E. (born in 1996), Dakota E. (born in 1997), Kaitlyn D. (born in 1998) and Elizabeth D. (born in 2000), the four children who are the subject of the instant permanent neglect proceeding.[1] Respondent Gary D. is the biological father of Kaitlyn and Elizabeth, and resided with all four children during the course of his rela-

---

1. It is to be noted that Melinda has had a total of nine children, each of whom has been removed from her home due to neglect (*see Matter of Evelyn B.*, 30 AD3d 913, 914 [2006], *lv denied* 7 NY3d 713 [2006]; *Matter of Ashley E.*, 271 AD2d 764 [2000]).

tionship with their mother.[2] Respondents separated in 2003 and Gary established his own residence. In July 2004, while the children were in his care, Gary left them alone with his brother, a known sex offender, who sexually molested one of them. As a result, petitioner removed the children from respondents' custody and placed them in foster care. Family Court subsequently found that the children were neglected by respondents. In April 2005, Family Court issued a dispositional order which, among other things, continued custody of the children with petitioner for 12 months and directed respondents to receive services, which included their participation in various counseling and treatment programs, necessary for reunification with the children. Family Court's findings were upheld by this Court on appeal (*Matter of Alaina E.*, 33 AD3d 1084 [2006]).

In June 2006, petitioner initiated this permanent neglect proceeding against respondents seeking to terminate their parental rights. Following fact-finding and dispositional hearings, Family Court granted the petition and terminated respondents' parental rights. Respondents now appeal.

Initially, we note that "[t]o obtain a termination of parental rights based upon permanent neglect, petitioner is required to prove by clear and convincing evidence that the parent failed to maintain contact with or plan for the future of his or her child for one year after the child came into petitioner's custody notwithstanding petitioner's diligent efforts to strengthen the parent-child relationship" (*Matter of Melissa DD.*, 45 AD3d 1219, 1220 [2007], *lv denied* 10 NY3d 701 [2008]; *see* Social Services Law § 384-b [7] [a]; *Matter of Star Leslie W.*, 63 NY2d 136, 140 [1984]). The threshold inquiry is whether petitioner exercised diligent efforts to strengthen the parent-child relationship by "offering appropriate services, such as counseling and treatment opportunities, arranging supervised visitation and creating a service plan to move towards unification, and encourages the parent's participation" (*Matter of James X.*, 37 AD3d 1003, 1006 [2007]; *see* Social Services Law § 384-b [7] [a], [f]; *Matter of Jamie M.*, 63 NY2d 388, 395 [1984]; *Matter of Melissa DD.*, 45 AD3d at 1220; *Matter of Shawna U.*, 277 AD2d 731, 732 [2000]).

Contrary to respondents' contentions, the record discloses that petitioner undertook diligent efforts to strengthen the parent-child relationship in the case at hand. In accordance with the dispositional order, petitioner devised service plans that made available to respondents parenting classes, mental

---

**2.** The biological father of Alaina and Dakota voluntarily surrendered his parental rights to these children.

health therapy, anger management counseling, substance abuse services and sexual abuse treatment. Through the provision of these services and its caseworkers' interaction with respondents, petitioner sought to encourage them to remedy the problems which led to the removal of the children from their care. In addition, it arranged for visitation with the children and offered to reimburse respondents for transportation expenses. Moreover, after Melinda moved to Clinton County to give birth to her ninth child, petitioner worked with the Clinton County Department of Social Services to coordinate the services recommended for her. Petitioner also provided respondents with updates on the children's progress through its contact with the foster parents. In our view, the foregoing constitutes clear and convincing evidence that petitioner met its statutory obligation (*see Matter of Gerald BB.*, 51 AD3d 1081, 1084 [2008], *lv denied* 11 NY3d 703 [2008]; *Matter of Maelee N.*, 48 AD3d 929, 930 [2008], *lv denied* 10 NY3d 709 [2008]).

Our conclusion is not altered by the fact that petitioner encouraged respondents to attend sex abuse counseling for offenders even though the dispositional order provided that the counseling to be provided was for nonoffenders. Neither Melinda nor Gary had been adjudicated a sexual offender and petitioner's directive appears to have been based upon the unsubstantiated reports of two of the children. Even though this particular type of counseling was not appropriate to the situation, petitioner nevertheless proposed sufficient other realistic programs designed to assist respondents in overcoming the problems preventing the return of their children so as to demonstrate that it exercised the necessary diligent efforts required by the statute (*see Matter of Lisa Z.*, 278 AD2d 674, 676-677 [2000]).

"Once an agency has demonstrated that it has made the requisite diligent efforts, the parent must show that his or her problems have been addressed and that there is a meaningful plan for the child's future" (*Matter of James X.*, 37 AD3d at 1006 [citation omitted]). This includes, but is not limited to, utilizing available medical, mental, social and rehabilitative services and material resources, as well as providing a stable and adequate home environment (*see* Social Services Law § 384-b [7] [c]; *see also Matter of Nathaniel T.*, 67 NY2d 838, 840 [1986]; *Matter of Elijah NN.*, 20 AD3d 728, 729 [2005]). At a minimum, the parents must "take meaningful steps toward alleviating the conditions that led to the children's removal from their home" in the first instance (*Matter of Lisa Z.*, 278 AD2d at 677; *see Matter of Christopher II.*, 222 AD2d 900, 901-902 [1995], *lv denied* 87 NY2d 812 [1996]).

Turning first to Gary, while evidence was presented that he completed a number of programs, he completely denied having an alcohol abuse problem and would not cooperate in obtaining treatment, despite the reports of his girlfriend that he used alcohol in excess. In addition, he moved a number of times and did not obtain housing that was suitable for the children. Moreover, he continued to associate with individuals, like his brother, who had histories of sexually abusing children. Furthermore, during supervised visitation, Gary did not engage the children in conversation or provide necessary discipline and often times appeared anxious for the visitation to end.

With regard to Melinda, evidence was presented that although she also participated in some suggested programs, she voluntarily moved to Clinton County shortly after the children were placed with petitioner and remained there for more than two years. Her priority was remaining in Clinton County with the father of her new baby, even after the baby was adjudicated a neglected child in April 2005 and removed from her care. She stayed with this man, whom she married in November 2006, even though he had a history of involvement with child protective services regarding his own daughter. While she resided in Clinton County, Melinda had sporadic and infrequent contact with the children. She often missed scheduled visitation appointments and, although she complained of transportation problems, she declined petitioner's offer of bus passes so that she could visit the children four times a year.

In view of the foregoing, we find that the record contains clear and convincing evidence that respondents failed to realistically plan for their children's future so as to facilitate the return of the children to their care (*see Matter of Jayde M.*, 36 AD3d 1168, 1170 [2007], *lv denied* 8 NY3d 809 [2007]). Accordingly, under the circumstances presented, Family Court properly adjudicated the children to be permanently neglected and terminated respondents' parental rights. Respondents' remaining contentions are either unpreserved for our review or are lacking in merit.

Mercure, J.P., Peters, Kane and Stein, JJ., concur. Ordered that the order is affirmed, without costs.

