McCarthy, J.
Appeal from an order of the Family Court of Rensselaer County (Cholakis, J.), entered March 4, 2011, which granted petitioner’s applications, in three proceedings pursuant to Social Services Law § 384-b, to adjudicate respondent’s children to be permanently neglected, and terminated respondent’s parental rights.
Respondent is the father of three sons (born in 2002, 2003 and 2005). In November 2007, the mother voluntarily placed the three children in petitioner’s care following several indicated reports of abuse and neglect. In 2010, petitioner commenced these proceedings to terminate respondent’s parental rights based upon permanent neglect.* Following hearings, Family Court found that respondent permanently neglected the children, and terminated his parental rights. Respondent appeals.
Family Court’s determination is supported by clear and convincing evidence. The threshold inquiry in a permanent neglect proceeding is whether the agency established that it made “diligent efforts to encourage and strengthen the parental relationship” prior to filing a petition (Social Services Law § 384-b [7]; see Matter of Neal TT. [Deborah UU.], 97 AD3d 869, 869-870 [2012]). Once that showing was made, petitioner had to prove that respondent failed to maintain contact with the children or plan for their future for the requisite time period (see Social Services Law § 384-b [7]). Here, petitioner held multiple service plan review meetings with respondent and repeatedly explained to him what steps he needed to take to obtain custody of his children. Petitioner referred respondent to an agency that provided parenting and anger management classes, approved payment for those classes, assisted him in applying for public assistance, arranged weekly visitation with the children and rearranged the visitation to fit respondent’s schedule when he began a new job. Petitioner also kept in contact with respondent’s probation officer and encouraged respondent to comply with terms of his probation, including enrolling in a batterer intervention program and obtaining employment.
Although petitioner did not actively assist respondent in complying with his mental health treatment or talk to his mental health providers, petitioner’s caseworker testified that such treatment was a condition of his probation, so she left that matter to the Probation Department and advised respondent to see his physician. While respondent contends that petitioner *1195 should have done more to assist him in this regard, noting that he was sometimes noncompliant with his medication regimen due to a lack of insurance, the record does not support his argument. Respondent testified that he sometimes forgot to take his medication due to his changing work schedule. He never told petitioner’s caseworker that he needed financial assistance to obtain medication. Even so, the caseworker assisted him in applying for public assistance, including food stamps and Medicaid, and the caseworker testified that respondent was found eligible, but he did not follow through to obtain those benefits by providing necessary documentation. Thus, petitioner met its threshold burden of proving that it made diligent efforts to encourage the parent-child relationship (see Matter of Neal TT. [Deborah UU.], 97 AD3d at 870).
At the time of the hearing, the children had been in foster care for nearly three years. Respondent had visited them weekly for extended periods, but he missed some visits due to his incarceration, did not visit for a period of several months due to depression, said he could not visit for months because of a lack of transportation — although he was able to regularly travel to his probation appointments during this time period — and he absconded from probation for 11 months and did not see the children throughout and beyond that time. Petitioner did not have contact information for respondent at that time, but continued to send letters to his mother’s address and his prior known addresses. Respondent enrolled in a parenting class, but attended only three of 12 sessions. He was arrested twice for domestic violence incidents, both committed while he was on probation for assaulting the children’s mother in front of the children, but he did not enroll in anger management classes or a batterer intervention program, telling one witness that he did not see a need for the latter. Respondent moved often and testified that he was basically homeless at one point during the relevant period. His work history was sporadic, as was his compliance with mental health treatment. Despite qualifying for public assistance and petitioner assisting him in completing the application, respondent failed to follow through so that he could actually obtain those benefits. He proffered no familial resources for the children. Hence, Family Court properly determined that respondent permanently neglected the children because he failed to maintain contact with them or plan for their future (see Matter of Neal TT. [Deborah UU.], 97 AD3d at 870-871; Matter of Alaina E., 59 AD3d 882, 886 [2009], lv denied 12 NY3d 710 [2009]).
Considering respondent’s lack of effort in addressing his situ *1196 ation, the extended period of time that the children had been in foster care and that the foster parents wished to adopt the children, the record supports Family Court’s determination that the children’s best interests were served by terminating respondent’s parental rights and freeing them for adoption, rather than granting a suspended judgment (see Matter of James J. [James K.], 97 AD3d 936, 939 [2012]).
Peters, EJ., Rose, Spain and Garry, JJ., concur. Ordered that the order is affirmed, without costs.

 The mother executed judicial surrenders of the children.